UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

PATRICK-JOSEPH GROULX,

Plaintiff,

v.

CSX CORPORATION,

Defendant.
_______________________________________/

Case No. 1:25-cv-10934

Honorable Thomas L. Ludington
United States District Judge

Honorable Patricia T. Morris
United States Magistrate Judge

**OPINION AND ORDER (1) SUSTAINING DEFENDANT'S OBJECTIONS IN PART, (2) OVERRULING DEFENDANT'S OBJECTIONS IN PART, (3) VACATING REPORT & RECOMMENDATION, (4) DENYING PLAINTIFF'S MOTION TO REMAND, (5) DENYING DEFENDANT'S MOTION TO DISMISS, (6) GRANTING PLAINTIFF'S MOTION FOR DISCOVERY, AND (7) VACATING PRETRIAL REFERRAL**

Plaintiff Patrick Groulx is enjoined from filing lawsuits in this federal judicial district. In February 2025, Plaintiff filed a *pro se* complaint in state court against Defendant CSX Corporation, alleging it negligently maintained railroad tracks in Saginaw, Michigan that damaged Plaintiff's cars as he drove over the tracks. Defendant promptly removed the case to this Court, citing diversity jurisdiction. Once removed, Plaintiff filed a motion to remand, and Defendant filed a motion to dismiss for lack of personal jurisdiction. In April 2025, Magistrate Judge Patricia T. Morris issued a report (R&R) recommending this Court grant Plaintiff's motion, remand the case back to state court, and deny Defendant's motion to dismiss as moot. The R&R reasoned that removal "was not proper." Defendant filed timely objections.

As explained below, Defendant's objections will be sustained in part. Removal was proper because this Court has diversity subject matter jurisdiction. Plaintiff's filing injunction does not deprive this Court's jurisdiction nor undermine the propriety of removal. Indeed, Plaintiff was not

enjoined from filing lawsuits in state court, and did not need leave to file his state complaint. Thus, the R&R will be vacated and Plaintiff's Motion to Remand will be denied.

Because the R&R did not address Defendant's motion to dismiss on the merits, this Court must do so on *de novo* review. After conducting such a review, Defendant's motion to dismiss for lack of personal jurisdiction will be denied. Plaintiff has shown a *prima facie* case that this Court has specific personal jurisdiction over Defendant in accordance with both the Michigan Long Arm Statute and Fourteenth Amendment due process. To the extent Plaintiff filed an ancillary motion seeking discovery to confirm this Court's personal jurisdiction, his motion will be granted.

**I.**

On February 6, 2025, this Court enjoined Plaintiff Patrick-Joseph Groulx from filing lawsuits in this judicial district without first obtaining leave. *Groulx v. Takeda Pharm. Co.*, No. 1:24-CV-12000, 2025 WL 415746 (E.D. Mich. Feb. 6, 2025) (detailing Plaintiff's lengthy history of frivolous *pro se* lawsuits). Weeks after this federal filing injunction, Plaintiff ran to state court and filed a *pro se* complaint in the 10th Circuit Court of Saginaw County, Michigan. ECF No. 1 at PageID.7–10. In his state complaint, Plaintiff alleged Defendant CSX Corporation "fraudulently neglect[ed] to repair . . . railways in Saginaw, Michigan," which damaged his "three vehicles" as he drove them "over the defective railways."[1] *Id.* at PageID.9. Plaintiff seeks $200,000 in damages. *Id.* at PageID.10.

On April 1, 2025, Defendant removed Plaintiff's Complaint to this Court because the amount in controversy exceeded $75,000 and the Parties are diverse. *See id.* at PageID.2. (noting Plaintiff is a Michigan resident but Defendant is incorporated in Virginia with a principal place of

[1] Notably, Plaintiff raised this claim against this Defendant in federal court, but the claim was denied without prejudice in January 2024 for failure to prosecute. *See Groulx v. CSX Corp.*, No. 22-12296, 2024 WL 386834 (E.D. Mich. Jan. 31, 2024).

business in Florida); *see also* 28 U.S.C. § 1332. On April 3, 2025, the undersigned referred all pretrial matters to Magistrate Judge Patricia T. Morris in accordance with Civil Rule 72 and the Magistrates Act, 28 U.S.C. § 636(b).

On April 4, 2025, Plaintiff filed a *pro se* motion to remand the case back to state court. ECF No. 3. On April 10, 2025, Defendant filed a motion to dismiss for lack of personal jurisdiction. ECF No. 4. On April 14, 2025, Judge Morris issued a report (R&R) recommending this Court (1) grant Plaintiff's motion to remand and (2) deny Defendant's motion to dismiss as moot. ECF No. 6. The R&R explained that the filing injunction against Plaintiff extended to cases removed from state court. *Id.* at PageID.38 (citing *Sandles v. McQuade*, No. 13-10663, 2013 WL 1438687, at *1–2 (E.D. Mich. Apr. 9, 2013)). And, "[s]ince no such leave was obtained," the R&R concluded that "removal to this Court was not proper." *Id.*

After Judge Morris issued the R&R, Plaintiff responded to Defendant's motion to dismiss on the merits, in so doing, requested additional "discovery or clarity" concerning Defendant's contacts in Michigan. ECF No. 7. Defendant then filed timely objections to the R&R, ECF No. 8, and Plaintiff responded, ECF No. 9.

**II.**

Under Civil Rule 72 and the Magistrate's Act, 28 U.S.C. § 636, a party may object to and seek review of a magistrate judge's orders. But this Rule and statute were intended to "improve access to the federal courts and aid the efficient administration of justice." *United States v. Walters*, 638 F.2d 947, 949 (6th Cir. 1981). In the interest of judicial efficiency, objections must be *specific. Howard v. Sec'y of Health & Hum. Servs*., 932 F.2d 505, 509 (6th Cir. 1991). Indeed, a "general objection to the entirety of the magistrate's report [or order] has the same effects as would a failure to object. The district court's attention is not focused on any specific issues for review, thereby

making the initial reference to the magistrate useless. The functions of the district court are effectively duplicated as both the magistrate and the district court perform identical tasks. This duplication of time and effort wastes judicial resources rather than saving them, and runs contrary to the purposes of the Magistrate's Act." *Id.*

The substance of the Magistrate's order dictates the district court's standard of review applicable to proper, specific objections. Judge Morris's recommendation to remand the case back to state court is a final, dispositive order. *Blackburn v. Oaktree Cap. Mgmt., LLC*, 511 F.3d 633, 635 (6th Cir. 2008); *Vogel v. U.S. Off. Prods. Co.*, 258 F.3d 509, 517 (6th Cir. 2001). So the undersigned "must" review all challenged issues *de novo*. *Baker v. Peterson*, 67 F. App'x 308, 310 (6th Cir. 2003) (citing 28 U.S.C. § 363(b)(1)(B) and FED R. CIV. P. 72(b)).

**III.**

Defendant's two objections are best considered in tandem. Defendant objects that Judge Morris erred in recommending remand because Defendant's removal was proper and its right to removal cannot be deprived by Plaintiff's federal filing injunction. ECF No. 8 at PageID.65–71. Accordingly, Defendant also objects that its motion to dismiss for lack of personal jurisdiction is not moot, and should be granted on the merits. *Id.* at PageID.72–78. Defendant is right on the former, but not on the latter.

**A. Removal and Remand**

This Court begins by assessing whether Defendant's removal was proper or whether, as the R&R concluded, this case must be remanded.

Defendants have a statutory right to remove cases from state to federal court when the parties are diverse and the amount in controversy exceeds $75,000. 28 U.S.C. § 1441(b) (cross-referencing 28 U.S.C. § 1332(a)); *see also Lincoln Prop. Co. v. Roche*, 546 U.S. 81, 89 (2005)

("While § 1332 allows plaintiffs to invoke diversity jurisdiction, § 1441 gives defendants a corresponding opportunity.").

Both elements of federal diversity jurisdiction are satisfied. Plaintiff resides in Michigan while Defendant is domiciled in Florida and Virginia. *See generally* ECF No. 1. And Plaintiff alleges $200,000 in property damages. *See generally id.* So this Court has diversity subject matter jurisdiction under § 1332(a) and Defendant's removal was proper. Contrary to the R&R's rationale, Plaintiff's federal filing injunction does not undermine the otherwise proper removal. The R&R cites two cases to support this point. ECF No. 6 at PageID.37–38. But both are inapposite.

Start with *Sandles v. McQuade*, No. 13-10663, 2013 WL 1438687 (E.D. Mich. Apr. 9, 2013). Leading up to that case, multiple judges across the Eastern District of Michigan enjoined Mr. Sandles from filing lawsuits in *both* state and federal court without obtaining leave from the federal court. *Id.* at *2. Yet Sandals filed a lawsuit in state court, which was later removed to federal court. *Id.* at *1. Contrary to the R&R's citation, the Court in *Sandles* did not conclude removal was improper in light of this injunction, and did not remand the case back to state court. It instead dismissed the removed federal claim altogether for failure to comply with the injunction. *Id.* at *2.

Next consider *Jackson v. Wells Fargo, N.A.*, No. H-21-1366, 2021 WL 9474098, (S.D. Texas, June 29, 2021). This case is even more dissimilar. In *Jackson*, the plaintiff was enjoined from filing *any* lawsuit—in state or federal court—raising a specific claim already considered and dismissed. *Id.* at *1. Yet the plaintiff filed a lawsuit alleging the enjoined claim in state court, which the defendant timely removed. *Id.* Like in *Sandles*, the Court in *Jackson* did not conclude that the removal was improper and did not remand the case back to state court. It instead dismissed

the removed federal claim for preclusion purposes and held the plaintiff in contempt for disobeying the injunction. *Id.*

These cases simply do not support the R&R's conclusion that "removal to this Court was not proper" because Plaintiff did not first obtain leave. ECF No. 6 at PageID.38. Indeed, unlike the injunction in *Sandles* and *Jackson*, Plaintiff's injunction did not require him to obtain leave before filing suits in *state court*. *See Takeda*, 2025 WL 415746, at *7 (enjoining Plaintiff from "filing any further lawsuits *in the United States District Court for the Eastern District of Michigan* without obtaining leave" (emphasis added)). This narrowness was intentional. *Id.* (explaining that filing injunctions must be "narrowly tailored" to comport with due process and should not "unnecessarily preclude a plaintiff's access to the courts"). So Plaintiff properly filed his state complaint. And Defendant properly removed the complaint to federal court.

The only issue, then, is whether Plaintiff's federal filing injunction warrants a remand to state court. It does not. Once properly removed, a federal court with subject matter jurisdiction can only remand a case back to state court in two limited circumstances expressly enumerated by statute. *See Bajor v. Wal-Mart Corp., No. 08-12401*, 2008 WL 3200022, at *2 (E.D. Mich. Aug. 6, 2008) ("In considering a motion to remand, a court's focus is restricted to its authority to hear the case pursuant to the removal statute."). First, a federal court may remand ancillary state law claims when a case is removed for federal question jurisdiction. *See* 28 U.S.C. § 1441(c). Second, a federal court may remand a case if there is a "defect in the removal procedure." *Buchner v. F.D.I.C.*, 981 F.2d 816, 819 (5th Cir. 1993); 28 U.S.C. § 1447(c). A "district court exceeds its authority if it remands a case" for any other reason. *Buchner*, 981 F.2d at 820 (citing *Thermtron Prods., Inc. v. Hermansdorfer*, 423 U.S. 336 (1976), *abrogated on other grounds by Quackenbush v. Allstate Ins. Co.*, 517 U.S. 706 (1996)).

The first remand circumstance is inapplicable because removal in this case was based on diversity—not federal question—jurisdiction. *See generally* ECF No. 1. And the second circumstance is not present. Plaintiff did not argue Defendant's removal was procedurally defective. *See* ECF No. 3. The R&R did not identify any procedural defects, either. *See* ECF No. 6. Examples of procedural defects include a failure to obtain all defendants' consent to removal, *Loftis v. United Parcel Serv., Inc.,* 342 F.3d 509, 514 (6th Cir. 2003); or removing a case to the "wrong federal district." *Balzer v. Bay Winds Fed. Credit Union*, 622 F. Supp. 2d 628, 629 (W.D. Mich. 2009). No such defect is present here. And *Defendant*'s removal is not procedurally defective for *Plaintiff's* "failure" to obtain this Court's leave before filing his state complaint, especially considering he did not need to obtain this leave in the first instance. *See Takeda*, 2025 WL 415746, at *7.

In sum, Defendant's first objection will be sustained. The R&R will be vacated to the extent it recommended that this Court grant Plaintiff's Motion to Remand and remand the above-captioned case back to state court. On *de novo* review, Plaintiff's Motion to Remand will be denied, and this Court will retain the above-captioned case.

**B. Personal Jurisdiction**

That leaves this Court with Defendant's Motion to Dismiss for lack of personal jurisdiction, ECF No. 4, and Defendant's response, construed as a separate motion since he requested additional discovery on the issue. ECF No. 7. The R&R did not reach the merits of Defendant's underlying motion, concluding it would be moot upon remand to state court. Since this Court will not be remanding the case to state court, it must consider the motion *de novo*. Applying *de novo* review, Defendant's motion to dismiss will be denied, and Plaintiff's responsive motion for discovery will be granted.

**1.**

A defendant may seek dismissal for lack of personal jurisdiction. FED. R. CIV. P. 12(b)(2). But these motions are procedurally puzzling and inherently involve burden shifting. *Gronski v. InContact, Inc.*, No. 1:24-CV-10970, 2025 WL 97617, at *2 (E.D. Mich. Jan. 14, 2025). As explained by the Sixth Circuit:

> The plaintiff must first make a prima facie case, which can be done merely through the complaint. The burden then shifts to the defendant, whose motion to dismiss must be properly supported with evidence. Once the defendant has met the burden, it returns to the plaintiff, who may no longer stand on his pleadings but must, by affidavit or otherwise, set forth specific facts showing that the court has jurisdiction.

*Malone v. Stanley Black & Decker, Inc.*, 965 F.3d 499, 504 (6th Cir. 2020) (citations omitted).

A court can proceed through these three shifting stages in three separate ways: "it may decide the motion upon the [parties' pleadings and] affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Far from trivial, the district court's choice "in how it resolves a 12(b)(2) motion" directly impacts the plaintiff's burden. *Id.*; *see also Malone*, 965 F.3d at 505.

If the court conducts an evidentiary hearing, "and the defendant's motion is properly supported with evidence, the plaintiff must overcome it by a preponderance of the evidence." *Malone*, 965 F.3d at 505. But when the court resolves the motion on the papers, the Plaintiff need only show a *prima facie* case that personal jurisdiction exists. *Id.*; *see also Peters Broad. Eng'g, Inc. v. 24 Cap., LLC*, 40 F.4th 432, 441 (6th Cir. 2022); *Schneider v. Hardesty*, 669 F.3d 693, 697 (6th Cir. 2012); *Theunissen*, 935 F.2d at 1458. Indeed, if the Court resolves a well-supported 12(b)(2) motion to dismiss on the papers, the plaintiff's burden is "relatively slight." *Malone*, 965 F.3d at 505 (quoting *Am. Greetings Corp. v. Cohn*, 839 F.2d 1164, 1169 (6th Cir. 1988)). Dismissal

is proper "only if *all* the specific facts" that "the plaintiff . . . alleges collectively fail to state a prima facie case for jurisdiction." *Kerry Steel, Inc. v. Paragon Indus., Inc.*, 106 F.3d 147, 149 (6th Cir. 1997) (emphasis in original) (internal quotations omitted). And the court views all pleadings and affidavits "'in a light most favorable to the plaintiff,' without weighing 'the controverting assertions of the party seeking dismissal.'" *Anwar v. Dow Chem. Co.,* 876 F.3d 841, 847 (6th Cir. 2017) (quoting *Theunissen*, 935 F.2d at 1459).

This latter point is crucial. Although courts can consider defense affidavits when assessing whether the defendant has sufficiently supported their Rule 12(b)(2) motion to dismiss in the second stage of the burden-shifting framework, the Sixth Circuit instructs district courts resolving 12(b)(2) motions on the papers to "ignore" these affidavits to the extent they squarely contradict the specific facts the plaintiff relies on to support their prima facie proofs. *Malone*, 965 F.3d at 505–06 (finding district court erred by considering and crediting—before any evidentiary hearing—defense affidavit that contradicted the specific facts plaintiff alleged to show personal jurisdiction); *see also Serras v. First Tennessee Bank Nat. Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989) (explaining "[a]ny other rule would empower a defendant to defeat personal jurisdiction merely by filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff").

**2.**

This Court declines to hold a pretrial evidentiary hearing and instead exercises its discretion to decide Defendant's motion on the papers. Plaintiff satisfied his initial burden by alleging in his Complaint that Defendant maintains railways in Michigan. ECF No. 1 at PageID.10. But Defendant's Motion to Dismiss was well-supported with a sworn declaration in which its Assistant Corporate Secretary Tammy Butler declared that Defendant "has never constructed, maintained, or operated any railroad rolling equipment, any railroad track, roadbed, or any other railroad

equipment . . . in the State of Michigan." ECF No. 4-1 at PageID.32.  So the burden shifts back to Plaintiff, who can "no longer stand on his pleadings" and, instead, must "set forth specific facts" establishing a *prima facie* case of jurisdiction. *Malone*, 965 F.3d at 504.

Plaintiff responded to Defendant's Motion by producing a 2016 fact sheet—purportedly distributed by Defendant—entitled "CSX In Michigan." ECF No. 7 at PageID.51. In this fact sheet, Defendant asserts that it "[o]perates and maintains more than 1,200 miles of track," "[m]aintains more than 910 public and private [railroad] crossings," and "employ[s] nearly 460 people" throughout the state across facilities in Flint, Wixom, Grand Rapids, Lansing, Plymouth, Wayne, New Boston, Melvindale, Livonia, and Detroit. *Id.* Defendant also explains how "[i]n 2015" alone, "CSX invested nearly $22.4 million in its Michigan network" and additionally invested "more than $1 billion in freight cars and other rolling assets to serve customers throughout its rail system" in Michigan. *Id.* Defendant's 2016 fact sheet is reproduced in full below:

# CSX IN MICHIGAN

## CSX Operations in Michigan

- Operates and maintains more than 1,200 miles of track*
- Maintains more than 910 public and private grade crossings
- Handled more than 461,000 carloads of freight on the state's rail network
- At the end of 2015, CSX employed nearly 460 people
- Throughout 2015, CSX reported more than $46.8 million in compensation for employees**
- In 2015, CSX invested nearly $22.4 million in its Michigan network. In addition, the company invested more than $1 billion in freight cars and other rolling assets to serve customers throughout its rail system.
- CSX carries a variety of commodities important to our economy and way of life, including consumer products, automobiles, food and agriculture products, and coal. Major commodities produced or consumed within the state include containerized consumer goods, coal, light trucks, passenger vehicles, and iron and steel scrap.

## CSX Facilities in Michigan

- Major rail yards in Detroit and Grand Rapids (Wyoming)
- Intermodal terminal in Detroit
- TRANSFLO terminals in Detroit, Grand Rapids, Wixom, and Melvindale
- Automotive distribution centers in Flint and New Boston

## CSX and the Michigan Community

- In partnership with state and local economic development agencies, Michigan businesses invested approximately $10.2 million in new or expanded rail-served facilities on CSX or its connecting regional and short lines in 2015. These investments will generate new jobs at those businesses.
- In 2015, CSX contributed more than $174,000 to organizations in Michigan, including the Southwest Detroit Business Association and Michigan Operation Lifesaver.

* Miles of track includes single main track, other main track, yard tracks and sidings as of December 31, 2015.

** This figure includes current and former employees.

Revised on August 8, 2016

*Id.* The "specific facts" enumerated on this sheet satisfy Plaintiff's "slight" burden to show a *prima facie* showing that this Court has, at least, specific personal jurisdiction over Defendant.[2]

For this Court to exercise specific personal jurisdiction over Defendant, two conditions must be met: (1) Michigan's long-arm statute must authorize jurisdiction, and (2) if it does, exercising jurisdiction must comply with the Due Process Clause of the Fourteenth Amendment. *Sullivan v. LG Chem, Ltd.*, 79 F.4th 651, 660 (6th Cir. 2023) ("Michigan's interpretation of its long-arm statute requires a separate analysis from the [Fourteenth Amendment] Due Process Clause[.]").

**a. Michigan's Long Arm Statute**

Plaintiff's *prima facie* proofs suggest that this Court's personal jurisdiction over Defendant accords with Michigan's Long Arm Statute. Among other circumstances, Michigan's Long Arm Statute authorizes specific personal jurisdiction over corporations that engage in "any business" transaction within the state. MICH. COMP. LAWS § 600.715(1). This hurdle is not high: limited jurisdiction is proper when a defendant conducts even "the slightest act of business in Michigan." *Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002).

[2] Although not necessary here, it appears this Court does not have *general* personal jurisdiction over Defendant. Under applicable Michigan law, a court has general personal jurisdiction over a defendant when the defendant is either (1) present in the state when process is served; (2) domiciled in the state when process is served; or (3) otherwise consents to personal jurisdiction, Defendant was served via certified mail in Florida, ECF No. 1 at PageID.1, 11. And Defendant has not otherwise consented to this Court's jurisdiction, even though it removed the case here. *See Arizona v. Manypenny*, 451 U.S. 232, 242 n. 17 (1981) ("[I]f the state court lacks jurisdiction over the subject matter or the parties, the federal court acquires none upon removal[.]"); *Tadco Constr. Corp. v. Peri Framework Sys., Inc.*, 460 F. Supp. 2d 408, 410 (E.D.N.Y. 2006) ("[R]emoval does not waive a personal jurisdiction objection."); *Rivera v. Bally's Park Place, Inc.*, 798 F. Supp. 2d 611, 615 (E.D. Pa. 2011) (same); *Danziger & De Llano, LLP v. Morgan Verkamp LLC*, 948 F.3d 124, 132 (3d Cir. 2020) (same, collecting federal appellate cases).

Here, far exceeding the "slightest act of business," and contrary to Defendant's sworn affidavit, *see* ECF No. 4-1, Defendant's fact sheet suggests that, as late as August 2016, it operated 10 facilities across the state, employed hundreds of employees, maintained thousands of miles of railways, spent millions to maintain "*its* Michigan network," and invested billions in "freight cars and other rolling assets" to serve Michigan customers. ECF No. 7 at PageID.51 (emphasis added). This substantial business activity shows a *prima facie* case of specific—or limited—personal jurisdiction as authorized by Michigan's Long Arm Statute. *See Kloosterman v. Gorman*, No. 317698, 2014 WL 7157422, at *5 (Mich. Ct. App. Dec. 16, 2014) (noting "transaction" as used in the long-arm statute need only "relate to some commercial behavior"); *Luckenbach Ziegelman Architects v. Margulies*, No. 313473, 2014 WL 1515275, at *4 (Mich. Ct. App. Apr. 17, 2014) ("'Transact' is defined as to carry on or conduct . . . [and] '[b]usiness' is defined as an occupation, profession, . . . trade, . . . purchase [or] sale of goods in attempt to make a profit" (internal quotations omitted)); *Oberlies v. Searchmont Resort, Inc.*, 633 N.W.2d 408, 413 (Mich. Ct. App. 2001) (same).

But Defendant's business activity in Michigan is not the only reason jurisdiction is proper under the state's Long Arm Statute. Michigan courts also have specific jurisdiction over corporate defendants who "caus[e] an act to be done, or consequences to occur, in the state resulting in an action for tort." MICH. COMP. LAWS § 600.715(2). And "this long-arm provision is a low bar: Michigan courts have interpreted this provision's language 'liberally to permit a wide-ranging exercise of personal jurisdiction.'" *Moore v. U.S. Ctr. for SafeSport*, No. 1:23-CV-11681, 2025 WL 278624, at *6 (E.D. Mich. Jan. 23, 2025) (quoting *Sullivan*, 79 F.4th at 660). As alleged in Plaintiff's Complaint, and supported throughout subsequent pleadings, Plaintiff's property was damaged in Saginaw, Michigan, when crossing railroad tracks plausibly maintained by Defendant.

*See* ECF Nos. 1 at PageID.9; 7 at PageID.51. And this damage "result[ed] in" Plaintiff's one-count negligence Complaint. ECF No. 1 at PageID.9–10. So specific personal jurisdiction is authorized by MICH. COMP. LAWS § 600.715(2), too. *See Jeffrey v. Rapid Am. Corp.*, 529 N.W.2d 644, 658 (Mich. 1995) (finding this provision of the long arm statute when the "cause of the [action], sounding in tort, is directly related to [the corporate defendant]'s contacts with Michigan").

In short, Plaintiff has shown a *prima facie* case that this Court's personal jurisdiction over Defendant accords with at least two provisions of Michigan's Long Arm Statute.

**b. Federal Due Process**

Although admittedly a closer call, Plaintiff has also shown a *prima facie* case that this Court's specific personal jurisdiction over Defendant comports with federal due process.

The Fourteenth Amendment Due Process Clause requires that plaintiffs establish a defendant's minimum contacts with the forum state sufficient to comport with "traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) (quoting *Milliken v. Meyer*, 311 U.S. 457, 463 (1940)). The Sixth Circuit uses a three-pronged test to determine if minimum contacts exist between a defendant and the forum:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*SFS Check, LLC v. First Bank of Delaware*, 774 F.3d 351, 356 (6th Cir. 2014) (internal quotations omitted). Each requirement will be addressed in turn.

***Purposeful Availment.*** The first requirement—purposeful availment—is "arguably the most important." *Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.*, 503 F.3d 544, 550 (6th Cir. 2007); *see also Theunissen*, 935 F.2d at 1460. Indeed, this requirement is the "constitutional

touchstone" of personal jurisdiction. *Neogen Corp.*, 282 F.3d at 889. A defendant purposefully avails himself or herself of a forum "by engaging in activity that should provide fair warning that he [or she] may have to defend a lawsuit there[.]" *Youn v. Track, Inc.*, 324 F.3d 409, 418 (6th Cir. 2003). In other words, purposeful availment "is present where the defendant's contacts with the forum state proximately result from actions by the defendant . . . that create a substantial connection with the forum State." *Neogen Corp.* 282 F.3d at 889 (internal quotations omitted).

Importantly, the relevant contacts for purposeful availment purposes are those contacts that the defendant had with the forum state "at the time the plaintiff's claim[] arose." *Moore*, 2025 WL 278624, at *7. So Defendant's 2016 fact sheet, without more, does not show that Defendant purposefully availed itself of doing business, and being sued, in Michigan at the time Plaintiff's claim arose in late 2021. But publicly available evidence suggests Defendant continued its contacts in Michigan through at least December 2021, just before Plaintiff filed his state complaint. *See* ECF No. 1 at PageID.10. Indeed, Defendant published *another* fact sheet on its website in late 2021 suggesting that—at the time Plaintiff's claim arose—it still maintained 1,123 miles of railway tracks, maintained 3,100 railroad crossings, employed 268 people, and invested over $17,000,000 in business operations across the state of Michigan. *See Michigan*, CSX, https://www.csx.com/share/wwwcsx15/assets/File/About_Us/State_Facts/MichiganStateFactSheet2022-8_5x14_RsGp.pdf (last visited May 2, 2025) [https://perma.cc/2LYQ-KMJN]. Far from insufficient "random, fortuitous, or attenuated," *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 475 (1985), Defendant's publicly broadcasted contacts with Michigan provide it with fair notice that it could be sued in the state. Purposeful availment is satisfied.

***Caused by Contacts.*** The second due process personal jurisdiction requirement—whether Plaintiff's action arises from or relates to Defendant's contact with Michigan—is similarly satisfied. The Sixth Circuit has articulated the standard for this second requirement as follows:

> [W]hether the causes of action were "made possible by" or "lie in the wake of" the defendant's contacts, *Lanier v. American Bd. of Endodontics*, 843 F.2d 901, 909 (6th Cir. 1988), or whether the causes of action are "related to" or "connected with" the defendant's contacts with the forum state, *Youn*, 324 F.3d at 419 (quoting *Third Nat. Bank in Nashville v. WEDGE Group Inc*., 882 F.2d 1087, 1091 n. 2 (6th Cir. 1989)). In addition . . . this standard [is] "lenient[ ]" and . . . the cause of action need not "formally" arise from defendant's contacts. *Bird v. Parsons*, 289 F.3d 865, 875 (6th Cir. 2002).

*Air Prods*., 503 F.3d at 553 (cleaned up).

As explained when analyzing Michigan's Long Arm Statute, Plaintiff's *pro se* Complaint—read in a favorable light as required at this juncture—alleges Defendants had a duty to maintain certain railway tracks in Saginaw, Michigan. ECF No. 1 at PageID.9–10. Defendant's 2016 and 2021 publicly available fact sheets suggest the same. And Plaintiff alleges his "Ford Explorer, his Volvo, and . . . his Mini Cooper" have been damaged by driving over unmaintained tracks. *Id.* at PageID.10. In this way, Plaintiff's one-count negligence complaint arises from and relates to Defendant's duties in Michigan. So this second due process personal jurisdictional requirement is satisfied. *See Neogen Corp.*, 282 F.3d at 883 (finding this requirement satisfied when "[c]onstruing the facts in the light most favorable to [plaintiff] . . . it [was] possible that [defendant]'s activities in Michigan . . . caused economic injury to [plaintiff]").

***Reasonableness.*** Lastly, this Court must assess whether Defendant had a "sufficiently substantial connection" to Michigan, "such that the exercise of jurisdiction is []reasonable." *Schneider*, 669 F.3d at 703. "In determining whether the exercise of jurisdiction is reasonable," courts consider the following factors: "(1) the burden on the defendant; (2) the interest of the forum state; (3) the plaintiff's interest in obtaining relief; and (4) other states' interest in securing [an]

efficient resolution[.]" *Air Prods.*, 503 F.3d at 554–55; *Asahi Metal Indus. Co. v. Superior Ct. of California, Solano Cnty.*, 480 U.S. 102, 113 (1987).

Plaintiff has alleged sufficient specific facts to present a *prima facie* case that this Court's exercise of personal jurisdiction over Defendant is reasonable. Indeed, "where, as here, the first two" due process requirements are met, "'an inference of reasonableness arises' and 'only the unusual case will'" result in unreasonableness. *Id.* at 554 (quoting *Theunissen*, 935 F.2d at 1461); *see also First Nat'l Bank of Louisville v. J.W. Brewer Tire Co.*, 680 F.2d 1123, 1126 (6th Cir. 1982). And Defendant has not "put forward" any "considerations . . . to overcome or contradict th[is] inference," *Air Prods.*, 503 F.3d at 555, aside from conclusively claiming it "did not perform any act or cause any consequences in Michigan." ECF No. 4 at PageID.29; ECF No. 8 at PageID.78.

In sum, Plaintiff and publicly available evidence have sufficiently demonstrated that all three due process requirements to vest this Court with specific personal jurisdiction over Defendant are satisfied. Because personal jurisdiction over Defendant also accords with Michigan's Long Arm Statute, Defendant's Motion to Dismiss for lack of personal jurisdiction, ECF No. 4, will be denied. But "because this decision is based on the Parties' papers, and all facts have been construed in a light most favorable to Plaintiff, Defendant . . . is free to 'further contest the issue of personal jurisdiction' after discovery and at the summary judgment stage." *Gronski*, 2025 WL 97617, at *8 (quoting *Neogen Corp*., 282 F.3d at 893). To the extent Plaintiff's Response to Defendant's Motion to Dismiss sought this very discovery and was construed as a motion, it will be granted. Indeed, discovery on this issue is necessary because Defendant's fact sheets—both those produced by Plaintiff and publicly available on Defendant's website—squarely contradict Defendant's sworn declarations concerning whether Defendant maintained railroad tracks in Michigan. *Compare* ECF

No. 4-1 at PageID.32 (Defendant "has never . . . maintained . . . any railroad track . . . in the State of Michigan) *with* ECF No. 7 at PageID.51 (noting Defendant "maintains more than 1,200 miles of track" in Michigan).

**IV.**

Accordingly, it is **ORDERED** that Defendant's Objections, ECF No. 8, are **SUSTAINED IN PART**, to the extent Defendant argued that the Report and Recommendation erroneously recommended this Court grant Plaintiff's Motion to Remand, ECF No. 3, and to the extent Defendant argued that its Motion to Dismiss, ECF No. 4, was not moot.

Further, it is **ORDERED** that Defendant's Objections, ECF No. 8, are **OVERRULED IN PART**, to the extent Defendant argued that this Court should grant its Motion to Dismiss on the merits.

Further, it is **ORDERED** that the Report and Recommendation, ECF No. 6, is **VACATED**.

Further, it is **ORDERED** that Plaintiff's Motion to Remand, ECF No. 3, is **DENIED.**

Further, it is **ORDERED** that Defendant's Motion to Dismiss, ECF No. 4, is **DENIED.**

Further, it is **ORDERED** that Plaintiff's Motion for Discovery, ECF No. 7, is **GRANTED**.

Further, it is **ORDERED** that the Court's order referring pretrial matters to Magistrate Judge Morris, ECF No. 2, is **VACATED**.

**This is not a final order and does not close the above-captioned case.**

Dated: May 29, 2025

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge